﻿Citation Nr: AXXXXXXXX
Decision Date: 06/16/20 Archive Date: 06/16/20

DOCKET NO. 200326-65512
DATE: June 16, 2020

ORDER

Waiver of recovery of an overpayment of VA compensation benefits in the amount of $18,838.00 is denied.

FINDINGS OF FACT

1. In December 2017, the Veteran’s spouse died; the Veteran notified VA within five days.

2. In February 2018, VA notified the Veteran that his wife’s information was removed from consideration for his pension eligibility and that his pension benefits were being proposed to be terminated effective January 1, 2018. 

3. In August 2018, the Veteran was notified of the decision to terminate his pension benefits effective January 1, 2018, which created an overpayment in the amount of $18,838.00.

4. The Veteran did not commit fraud, misrepresentation, or bad faith in the creation of the debt, but recovery of the overpayment would not subject the Veteran to undue hardship, or be against equity and good conscious.

5. A waiver of the debt would result in unjust enrichment to the Veteran.

CONCLUSION OF LAW

The criteria for entitlement to a waiver of recovery of overpayment of VA compensation benefits are not met. 38 U.S.C. §§ 5107, 5302 (2012); 38 C.F.R. §§ 1.911, 1.963, 1.965, 3.666 (2019).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veteran honorably served on active duty from June 1951 to May 1953. This matter is before the Board of Veterans’ Appeals (Board) on appeal from an August 2019 Department of Veterans Affairs (VA) Debt Management Center (DMC), Committee of Waivers and Compromises (COWC) Decision. The Veteran filed a VA From 10182 Notice of Disagreement in March 2020 and selected the Direct Review Lane for appellate review.

The Veteran is seeking waiver of overpayment of $18,838.00 in debt owed to VA. By way of history, in August 2017, the Veteran submitted a claim for special monthly pension (SMP) based upon the need for aid and attendance for his wife. The RO sent him a letter in November 2017 letting him know that SMP cannot be awarded for spouses of living veterans, but that his wife’s medical expenses would be considered when determining his eligibility for pension benefits. The record shows that the Veteran was in receipt of pension benefits with recognition of his dependent spouse effective April 30, 2016. 

The Veteran’s wife passed away on December [REDACTED], 2017. A VA memorandum in the claims file shows he took action just five days later, on December [REDACTED], 2017, to notify VA of her death and requested she be removed from his award as soon as possible. In February 2018, VA notified the Veteran that his wife would be removed from his award, to include consideration of both her income and her medical expenses, effective January 1, 2018, the first day of the month following her death. This letter also indicted VA’s proposal to terminate the Veteran’s benefits as of that date, as his Social Security benefits had increased, and his spouse’s income and medical expenses has been removed from the calculation. VA requested an updated Medical Expense form at that time. 

In March 2018, the Veteran submitted Medical Expense Reports for 2017 and a 2018. In May 2018, the RO contacted the Veteran by telephone to seek additional information for the private home care he listed on his Medical Expense Report. At that time, he notified VA that a prior caregiver for his wife only worked for them in early 2017 and that another took her place later in the year. The RO followed up that call with a letter in May 2018 requesting that he complete new forms with more information related to the caregiver costs. Because no response was received, the RO again called the Veteran in June 2018. He indicated that he did not receive the May 2018 letter. A follow up letter was sent requesting this information in June 2018. The Veteran responded with additional information related to his caregiver costs in June and July 2018. 

In August 2018, the RO wrote to the Veteran, summarized the actions that had taken place and notified him of the decision to terminate his pension benefits effective January 1, 2018. The letter also indicated that with the clarification of some medical expenses, the pension benefits to which the Veteran was entitled was actually less than what he had been paid beginning May 2017, and that based upon the Veteran’s reported income and expenses for 2018, his countable income exceeded the maximum allowable for pension benefits for a veteran with no dependents, as of January 1, 2018. This letter also notified him that, as a result, he had been paid too much. Later in August 2018, the DMC notified the Veteran of his overpayment of $18,838.00. 

In September 2018, the Veteran submitted a statement. He requested an audit and also suggested the amount of $18,838 was incorrect. VA responded to the audit request in October 2018. (He was paid $1402 per month from May 2017 to July 2018, and he was entitled to only $274 per month from May 2017 to December 2017.) The Veteran did not provide further arguments as to the validity of the debt; however, in December 2018, a VA memorandum shows the matter of the validity of the debt was referred for adjudication based upon the Veteran’s comments. Later in December 2018, VA sent the Veteran a letter addressing the validity of the debt. The Veteran has not since challenged the validity of the debt. In June 2019, the Veteran was notified that his request for waiver was being referred to the Committee on Waivers and Compromises. In August 2019, the Veteran was notified of the decision to deny waiver of his debt. He was encouraged to contact VA to work out a personalized plan for repayment of the debt. The phone number to call to arrange for the personalized plan was provided.

In September 2019, the Veteran’s representative submitted a statement, requesting waiver and suggesting VA was at fault as “VA failed to discontinue payments, when his wife passed away.” This communication suggested the Veteran was willing to make payments. It also suggested either a waiver or repayment plan is warranted because of the Veteran’s age and the fact that he is living off of a reverse mortgage and his Social Security. 

In September 2019, the Veteran’s representative submitted a statement suggesting VA was subjecting the Veteran to abuse and disregarding his well-being, noting his advancing age and the loss of his spouse. The representative suggested VA failed to stop payments after the Veteran’s wife passed away and failed to contact the Veteran when it was known that his wife had passed. The representative then suggested “VA wants to take away his Service Connected Disability, which he earned in Service to this country and refuses to give him a waiver or payment plan, so that he can keep some of his Compensation.”

In September 2019, the Veteran’s representative also submitted a copy of a handwritten statement by the Veteran, and which summarized the actions taken, as noted above. There are no further statements as to why he believes waiver is warranted. The Veteran’s filed a notice of disagreement as to the matter of entitlement to a waiver in March 2020. No further arguments have been received.

In determining whether a waiver of overpayment is appropriate, the inquiry is focused on three distinct questions. First, VA must determine if the overpayment at issue was validly created. See Schaper v. Derwinski, 1 Vet. App. 430, 434-35 (1991) (noting that before adjudicating a waiver application, the lawfulness of the overpayment must first be decided). The term “overpayment” refers only to those benefit payments made to a designated living payee or beneficiary in excess of the amount due or to which such payee or beneficiary is entitled. See 38 U.S.C. § 5302; 38 C.F.R. § 1.962. The Veteran has the right to dispute the existence and amount of the debt. 38 C.F.R. § 1.911(c). Second, if the debt is valid, VA must determine if fraud, misrepresentation, or bad faith played a role in its creation. If it did, waiver of the overpayment is automatically precluded, and further analysis is not warranted. See 38 U.S.C. § 5302(a); 38 C.F.R. §§ 1.963(a), 1.965(b); see also Ridings v. Brown, 6 Vet. App. 544 (1994) (holding that the Board must independently address the matter of bad faith before addressing whether waiver would be appropriate). Finally, if VA determines that the debt is valid, and that fraud, misrepresentation, and/or bad faith had no part in its creation, VA must then consider whether collection of the debt would be against equity and good conscience. See 38 U.S.C. § 5302(b); 38 C.F.R. §§ 1.962, 1.963, 1.965.

Based on the evidence of record, the Board finds that the overpayment at issue in this case was validly created. The Veteran was provided with a response to his suggestion that the debt was not valid, and he has not since questioned the validity of this debt. His disagreement was limited to the denial of a waiver. Accordingly, the Board finds the creation of the overpayment was valid and the matter of its validity is not a question before the Board. 

Next, the Board notes that the August 2019 decision shows that VA found no fraud, misrepresentation, or bad faith on the Veteran’s part. See 38 C.F.R. § 1.963(a) (in cases where there is no fraud, misrepresentation, or bad faith on the Veteran’s part with respect to the creation of the overpayment at issue, waiver is not precluded pursuant to 38 U.S.C. § 5302(a)). The Board will not disturb this positive finding. 

The next question is whether the facts dictate that a waiver should be granted under the standard of “equity and good conscience.” The phrase “equity and good conscience” means the arrival at a fair decision between the obligor and the Government. In making this determination, consideration will be given to the following elements (which are not intended to be all-inclusive): (1) fault of the debtor, (2) balancing of faults between the debtor and VA, (3) undue hardship of collection on the debtor, (4) defeat of the purpose of an existing benefit to the appellant, (5) unjust enrichment of the appellant, and (6) whether the appellant changed positions to his or her detriment in reliance upon a granted VA benefit. 38 U.S.C. §5302; 38 C.F.R. § 1.965(a).

After reviewing all the evidence of record, the Board finds that recovery of the overpayment would not violate principles of equity and good conscience.

In this regard, the Board initially notes that the August 2019 decision found that there was no significant fault of the Veteran in the creation of the debt. The Board will not disturb this favorable finding. 

As to the fault of VA, the Veteran claims VA is at fault because it did not stop paying the benefits when his wife passed away. As noted above, the Veteran did notify VA of the death of his spouse just five days after she passed away and requested that she be removed from his award. While this is indeed true, the Board finds there was no significant fault on the part of VA, as the RO notified the Veteran of the pending termination of his pension benefits effective January 1, 2018, as early as the February 2018 letter. The Veteran responded with ongoing clarifying information related to his medical expenses. Once that information was complete, VA moved forward with the termination of pension benefits as it had indicated it would back in February 2018. There is no evidence that VA is at fault for the incurrence of this debt.

With respect to the third element, undue hardship, the Veteran has claimed he receives income from his reverse mortgage and Social Security. He has not provided information related to his reverse mortgage. A letter was sent to him in December 2018 requesting updated income information and the necessary forms were provided. He did not respond. As noted above, the Veteran also suggested willingness to participate in a repayment plan. The information was provided in the various letters sent to him related to the debt as to how to contact VA to set up the repayment plan. While the exact numbers have not been provided by the Veteran as to his total income in relation to his expenses, the Board finds he was given the opportunity to provide this information. Without it, there is simply no basis for finding that an undue hardship is demonstrated. Therefore, based on the evidence of record, the Board finds that collection of the debt would not deprive the Veteran of basic necessities.

Regarding the fourth element, the recovery of the debt would not defeat the underlying objective of the benefit. The Veteran was found eligible for pension benefits based upon his income level with consideration of the expenses of his dependent spouse, which were nullified when his wife passed away. Without consideration of these expenses, the Veteran did not meet the regulatory income limitations for pension benefits. The Veteran was not entitled to receipt of pension benefits at the rate he was paid beginning in May 2017, or at any time after January 1, 2018.

Regarding the fifth element, the Board finds waiver of recovery of the overpayment would constitute an unjust enrichment to the Veteran because he would be allowed to retain funds to which he was not legally entitled. 

Finally, regarding the sixth element, there is no indication that he incurred a legal obligation or changed his position to his detriment in reliance upon the receipt of VA disability compensation benefits that included compensation for a spouse.

The Board recognizes the Veteran’s representative’s various contentions, to include abuse, disregarding the Veteran’s well-being, failure to contact the Veteran when it was known that his wife had passed, taking away the Veteran’s “Service Connected Disability,” and refusing to give him a payment plan. These contentions are simply erroneous. There is no evidence of any abuse of the Veteran or disregard of his well-being. VA staff took great care to send letters to the Veteran and to follow up those letters with phone calls and give him time to respond with information to attempt to retain his benefits. VA did reach out to him in writing less than 90 days after his wife’s passed away. Moreover, the debt created arose from the Veteran becoming ineligible for pension benefits; VA is not taking away service connected disability. And, VA has notified him of the number to call to set up a payment plan; it has not refused to give him a payment plan. The representative’s September 2019 statement was very simply factually inaccurate.

Based upon the foregoing, the Board finds the weight of the elements of equity and good conscience are not in the Veteran’s favor. The Board certainly sympathizes with the Veteran’s loss of his spouse, but VA cannot award benefits that are not allowable under the law, such as pension benefits for veterans who are ineligible due to the income level limitations. While the Veteran is not deemed at fault in creating this debt, the evidence does not support a finding of financial hardship, nullification of the purpose for which the benefits were intended, or reliance on the benefit to his detriment. Failure to make restitution would result in unfair gain to the debtor and unjust enrichment at the expense of the government. As such, the elements supporting recoupment of the overpayment debt outweigh the elements in favor of a waiver of recovery. 

Accordingly, waiver of recovery of the overpayment is not warranted, and the claim must be denied.

 

 

MICHAEL E. KILCOYNE

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board A. Adamson, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.